Filed 5/5/14  P. v. Aviles CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ULYSES AVILES,<br><br>Defendant and Appellant. | F065396<br><br>(Super. Ct. No. BF126367A)<br><br><br>**OPINION** |

-ooOoo-

## THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  Kenneth C. Twisselman II, Judge.

Alison E. Kaylor, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Gomes, Acting P.J., Kane, J. and LaPorte, J.†

†       Judge of the Superior Court of Kings County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

## INTRODUCTION

On February 24, 2010, appellant, Ulyses Aviles, was charged in an information with the first degree murder of Carlos Serrano (Pen. Code, § 187, subd. (a))[1] and three prior prison term enhancements (§ 667.5, subd. (b)). On March 21, 2012, the trial court denied Aviles's suppression motion. At the conclusion of a jury trial on April 19, 2012, the jury acquitted Aviles of first and second degree murder but found Aviles guilty of voluntary manslaughter. In a bifurcated proceeding, the trial court found two of the prior prison term enhancements true.

At the sentencing hearing on July 3, 2012, the trial court denied Aviles's motion for a new trial. The court sentenced Aviles to the upper term of 11 years plus a consecutive term of one year for one of the prior prison term enhancements for a total prison sentence of 12 years. The court awarded 1269 days of credits for time in custody, conduct credits of 190 days, and total custody credits of 1459 days. Direct victim restitution was reserved. The court imposed various fines and fees, included a restitution fine of $240.

Appellate counsel has filed a brief seeking independent review of the case by this court pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).

## FACTS

### *People's Case*

On January 11, 2009, before 8:00 p.m., Keith Clifford and Carlos Serrano left in a Saturn Ion searching for marijuana. Clifford was driving. A truck with its high beams on pulled beside Clifford's car. Clifford pulled off Highway 46 on to Bruning Street and saw the same truck drive past him. The truck, driven by Aviles and with four male passengers, returned and stopped beside the driver's side of Clifford's car. Aviles,

---

[1]     Unless otherwise designated, all statutory references are to the Penal Code.

referring to Serrano, asked Clifford why he was "hanging out with that bitch." Everyone exited their vehicles.

Serrano said it was between him and Aviles, "one-on-one." Serrano threw the first punch, hitting Aviles in the face as Aviles's hands were down to his side. Serrano took off running with Aviles and his companions chasing after him. Clifford, and Jeff Johnson, an acquaintance who was nearby, drove in Clifford's Saturn to find Serrano. They found Serrano with a bloody nose walking out of a yard on Universal Street. It took Clifford almost 10 minutes to drive from where the encounter began.

Serrano asked Clifford to take him home, which was three minutes away. Clifford knocked on the door and told Serrano's mother her son was beaten up. Serrano's mother and Clifford walked Serrano from the car. Serrano's father, Jose Martinez, told the police that he answered the door and saw his son all bloody.

Serrano had a wound on his head from one ear all the way to the other side of his head. He had suffered stab wounds on his back and chest. Serrano had blood on his shirt, pants, and arms. Serrano told his father more than once that Aviles had injured him. On one occasion, Serrano told his father that Aviles and his friends injured him. Serrano asked to be taken to the hospital because he did not want to die.

Serrano's parents tried to drive him to the hospital, but Martinez stopped at a gas station and asked for help because he could see that Serrano was in serious condition. Martinez denied that Serrano yelled at him to stop at the gas station. Police and an ambulance arrived in minutes. Martinez told a police investigator that Serrano was yelling at him which was why he stopped at the gas station. The officer found Serrano to be very upset.

When paramedics arrived, they found Serrano's blood pressure dropping and that he was about to go into cardiac arrest. Serrano was in a hostile emotional state. It took roughly 22 minutes to transport Serrano to Mercy Southwest Hospital. During

transportation of Serrano, however, paramedics stopped administering CPR because Serrano had stopped breathing and died.

Clothing, including a pair of Levi's jeans, was seized from Aviles's home during the execution of a search warrant. Blood from the front of the jeans tested positive for the presence of Serrano's blood, Aviles's blood, and the blood of an unknown third person.

According to Dr. Lesley Wallis, the pathologist who examined Serrano, he suffered eight stab wounds. Several of the stab wounds were superficial, though they still caused bleeding. Two of them were penetrating. One wound went from the chest into the liver. The other went from the abdomen through the kidney. These two wounds caused Serrano to "bleed out," and were significant enough by themselves to be fatal. Serrano's cause of death was from multiple stab wounds.

Serrano did not have any natural diseases that could have superseded the stab wounds as the cause of his death. Benzoylecgonine, a metabolite of cocaine, methamphetamine, and amphetamine were found in Serrano's body. Serrano's blood contained .04 milligrams per liter of blood of Benzoylecgonine, .22 milligrams per liter of blood of methamphetamine, and .01 milligrams per liter of blood of amphetamine. Dr. Wallis could not determine how much methamphetamine Serrano ingested.

*Defense Case*

Dr. Julian Smith, a psychiatrist, testified that amphetamine and D-methamphetamine are brain stimulants that release larger amounts of neuro chemicals into the brain, such as dopamine, serotonin, and norepinephrine, also known as noradrenaline. D-methamphetamine causes more noradrenaline production which enacts the fight-or-flight response.

Although using methamphetamine initially causes an intense feeling of euphoria, it also causes users to feel invincible or that they have more strength or power than they actually have. Methamphetamine impairs the judgment of those who use it. It also

4.

causes users to become paranoid, to hear voices, and to have visual and tactile hallucinations. Methamphetamine users suffer from impaired concentration and hyperactivity.

Dr. Smith explained that .02 milligrams of methamphetamine indicates drug abuse. Serrano had .22 milligrams of D-methamphetamine and .01 milligrams of amphetamine in his blood. This was 11 times greater than therapeutic levels. Dr. Smith concluded that Serrano was abusing methamphetamine which would cause gross hallucinations, a heightened fight-or-flight response, psychosis, confusion, paranoid thoughts, delusions, and perceptual misperceptions. These reactions could have made Serrano more aggressive.

## APPELLATE COURT REVIEW

Appellant's appointed appellate counsel has filed an opening brief that summarizes the pertinent facts, raises no issues, and requests this court to review the record independently. (*Wende*, *supra*, 25 Cal.3d 436.) The opening brief also includes the declaration of appellate counsel indicating that appellant was advised he could file his own brief with this court. By letter on March 22, 2013, we invited appellant to submit additional briefing. To date, he has not done so.

After independent review of the record, we have concluded there are no reasonably arguable legal or factual issues.

## DISPOSITION

The judgment is affirmed.